IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RHONDA L. LEE,

      Plaintiff,

v.                                No. 12-1158

NANCY A. BERRYHILL,[1] Acting
Commissioner of Social Security,

      Defendant.

_____

ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
_____

*INTRODUCTION AND PROCEDURAL BACKGROUND*

      Before the Court is the Social Security action of the Plaintiff, Rhonda L. Lee, pursuant to

42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social

Security denying her claim for disability insurance benefits ("DIB").  She applied for DIB on

December 1, 2008, alleging disability as of November 8, 2007.  The claim was denied initially

and upon reconsideration.  Following a hearing conducted on June 16, 2010, Administrative Law

Judge ("ALJ") Jerry M. Lang denied her claim in an opinion issued October 13, 2010.  Plaintiff's

request for review of the ALJ's decision was denied by the Appeals Council on June 8, 2012,

and this action was commenced shortly thereafter.

*ADMINISTRATIVE HEARING*

      At the hearing before the ALJ, Lee testified that she had a high school education and past

work as a nurse's assistant, casting factory worker, and sewing factory employee.  Plaintiff told

---

[1]At the time the complaint was filed, Michael J. Astrue was Commissioner of Social
Security.  Since January 23, 2017, Nancy A. Berryhill has held the post of Acting Commissioner.

the ALJ that, on November 8, 2007, while employed as a nurse's assistant in a nursing facility, she was helping a patient get into bed when she fell and injured her back. She reported constant pain, as well as depression, anxiety, lack of concentration, and poor memory and focus. Her pain was alleviated to some extent by medications but it nonetheless affected her concentration and memory, and required that she lie down several times during the day with a pillow between her legs. The claimant also took medications for depression and anxiety.

Lee testified that she could lift and carry no more than five pounds, stand for no more than thirty minutes at a time, sit for about twenty minutes, walk less than a quarter block, and rated her pain as a six out of ten. According to the claimant, she would start basic housework and have to lie down and rest before completing the task. Plaintiff stated that she could not drive, "stand over and watch" a meal, bathe in a bathtub, or go outside. She advised the ALJ that, on an average day, when she felt like getting out of bed, she would take her medicine and return to bed until the pain began to subside. Then she would get up again and move to the couch, prop up her feet, and put a frozen dinner in the microwave if she was hungry. She stayed in a prone position most of the day because it hurt to sit up.

*ADMINISTRATIVE DECISION*

Upon hearing testimony and reviewing the evidence, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since November 8, 2007, the alleged onset date (20 CFR 404.1571 *et seq*).

3.  The claimant has the following severe impairments: degenerative disc disease and affective mood disorder (20 CFR 404.1520(c)).

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a).[2] The claimant also has the following nonexertional limitations:  work that does not require the ability to understand, remember, or carry out detailed or complex job instructions, or that requires more than two hours of sustained concentration without a break.

6.	The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.	The claimant was born on October 24, 1966 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.	The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.	Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.	The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2007, through the date of this decision (20 CFR 404.1520(g)).

(Administrative Record ("AR") 16-22.)

---

[2]The regulation defines sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

*PLAINTIFF'S STATEMENT OF ERRORS*

The claimant raises three challenges to the ALJ's unfavorable ruling:

1.      ALJ Lang erred as a matter of law in not finding that Ms. Lee's Affective and Anxiety Disorders meet and/or are medically equivalent to Listing(s) 12.04 and/or 12.06[;]

2.      ALJ Lang erred as a matter of law in not according adequate weight to the medical opinions and findings of Ms. Lee's treating providers, and instead finding that Ms. Lee can perform a full range of unskilled sedentary work activities[; and]

3.      The Commissioner erred as a matter of law in failing to sustain his burden of establishing that there is other work in the national economy Ms. Lee can perform.

(Docket Entry ("D.E.") 9 at PageID 546.)

*STANDARD OF REVIEW*

A federal court's review of the Social Security Administration's denial of a claim for benefits "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires more than a mere scintilla but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (internal quotation marks omitted). "This standard presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 168 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)) (internal quotation marks omitted). "If substantial evidence supports the ALJ's decision, then reversal is unwarranted even if substantial evidence backs the opposite conclusion." *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 639 (6th Cir.

2016) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Stated differently, "[u]pon a finding that there is substantial evidence to support the ALJ's findings, [the court] must affirm, and may not even inquire whether the record could support a decision the other way." *Staymate v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2017 WL 902136, at *3 (6th Cir. Mar. 7, 2017) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)) (internal quotation marks omitted).

To be entitled to DIB, a claimant must be "under a disability within the meaning of the Social Security Act." *Sorrell*, 656 F. App'x at 168-69 (quoting *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)). The statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "To be found disabled, a claimant's impairments must not only prevent the claimant from doing her previous work, but they must also render the claimant unable to engage in any other kind of work that exists in significant numbers in the national economy." *Sorrell*, 656 F. App'x at 169 (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)) (internal alterations & quotation marks omitted).

> The ALJ must engage in a five-step sequential evaluation process to determine whether a claimant is disabled. At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity; if the claimant is performing substantial gainful activity, then the claimant is not disabled. At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." If the claimant does not have a severe impairment or combination of impairments, then the claimant is not disabled. At step three, the ALJ must determine whether the claimant's impairment meets an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled. Otherwise, the ALJ will proceed to the fourth step, where the ALJ must assess the claimant's residual functional capacity and past work. If the claimant can still perform his or her past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the

> ALJ must determine whether the claimant can make an adjustment to other work at step five. If the claimant cannot make the adjustment, the ALJ will find the claimant disabled.

*Miller*, 811 F.3d at 834 n.6 (internal citations omitted); *see also Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 491-92 (6th Cir. 2011) (same).

*ANALYSIS*

<u>Mental Impairments.</u>

This challenge to the ALJ's determination focuses on step three of the sequential analysis. "The disability-qualifying impairment listings at step 3 are descriptions of various physical and mental illnesses and abnormalities defined in terms of several specific medical signs, symptoms, or laboratory test results." *Bowman v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2017 WL 1065553, at *4 (6th Cir. Mar. 21, 2017) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 529-30 (1990)) (internal alterations & quotation marks omitted). If a claimant satisfies the requirements of a listing, she is automatically entitled to benefits without further inquiry. *Id.* When she alleges her impairments "meet or equal a listed impairment, [s]he must present specific medical findings to satisfy the criteria of the particular listing." *Id.* "It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment." *Blanton v. Soc. Sec. Admin.,* 118 F. App'x 3, 6 (6th Cir. 2004). The ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).

The ALJ considered whether the severity of Lee's mental impairments met or equaled the criteria of Listings 12.04 and 12.06. The Plaintiff does not challenge the application of these listings. Impairments for affective disorders under § 12.04 and anxiety-related disorders under §

12.06 must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.04(B) & 12.06(B); *Bowman*, 2017 WL 1065553, at *4. "Marked" for purposes of the listing "means more than moderate but less than extreme." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00C; *Bowman*, 2017 WL 1065553, at *4.

Even if a claimant cannot satisfy the so-called "paragraph (B)" criteria outlined in the preceding paragraph, she may meet the listings by demonstrating that the requirements of paragraph (C) have been met. Paragraph (C) of Listing 12.04 mandates a showing of "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04(C). The paragraph (C) criteria is met under § 12.06 where the claimant has a "complete inability to function independently outside the area of [her] home." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.06(C); *Bowman*, 2017 WL 1065553, at *5.

Plaintiff claims error on the grounds the ALJ found she did not meet or equal the listings based solely on responses to function reports, to the exclusion of the medical records. Specifically, she asserts the ALJ, in making his determination, ignored treatment records from Pathways Behavioral Health Center ("Pathways"), as well as a May 12, 2010, Medical Source Statement ("MSS") issued by Joe Guyton, M.D., a staff psychiatrist at Pathways, and an October 26, 2010, letter prepared by Dr. Guyton and Pathways Clinical Manager Carolyn Crawford.

At the outset, the Court must address the letter with respect to its consideration as a part of the instant appeal. The missive read as follows:

> Rhonda Lee is being treated at Pathways Behavioral Health Center. She is currently involved in Individual Counseling and Medication Management. She is prescribed Xanax 1 mg. TID or QID, Seroquel 100 mg. HS, and Zoloft two tablets 100 mg. daily. She has been diagnosed as Major Depressive Disorder and Panic

> Disorder with Agoraphobia.  She was first diagnosed with Major Depression during her intake evaluation on 3/26/09 by Amber Shelby, MSW, after being unable to return to work due to back pain.  Rhonda was referred to Individual Therapy and Medication Clinic to address her symptoms.  However, Rhonda['s] anxiety has increased to the point of panic attacks almost daily.  She has to depend on family members to bring her to appointments.  She has become afraid to drive out of fear [of] having a panic attack.  She has to shop with an escort and avoid being in stores with a crowd.  Rhonda feels depressed and worthless having to depend on others to function daily.  Despite treatment, Rhonda's condition remains unresolved.  She admitted to minimizing her symptoms when she comes in for her appointments out of fear of being sent to a mental hospital. . . .

(AR 474.)  The communication was submitted to the Appeals Council but was not before the ALJ.

After the Appeals Council denies review and the ALJ's decision becomes the Commissioner's final decision, the district court, under sentence four of § 405(g), "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Evidence reviewed only by the Appeals Council is not part of the record in a sentence four review, which is limited to the record before the ALJ.  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993); *Wood v. Colvin*, Civil Action No. 13-CV-12572, 2014 WL 1377814, at *1 n.1 (E.D. Mich. Apr. 8, 2014) (affirming report & recommendation).  Thus, to the extent Plaintiff seeks a sentence four review of the ALJ's decision, the Court may not consider the October 26, 2010, letter.

The district court may, however, consider evidence submitted after the ALJ's decision for the limited purpose of determining whether to remand the case for consideration of that evidence pursuant to sentence six of § 405(g).[3]  *Cline*, 96 F.3d at 148.  Such remand is appropriate "when

---

[3]Sentence six states as follows:

good cause exists for the failure to incorporate the new evidence into the record in a prior proceeding." *Graley v. Comm'r of Soc. Sec.*, 646 F. App'x 414, 416 (6th Cir. 2016).  A claimant must show, in order to obtain a sentence six remand, "(1) that the evidence is 'new' or was otherwise unavailable to the claimant, (2) that the evidence is 'material,' and (3) that . . . she has 'good cause' for failing to submit the evidence below." *Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006)).  A claimant's failure to demonstrate all of the elements is fatal to her claim for remand. *Id.*

"Evidence is 'new' if it did not exist at the time of the administrative proceeding[.]" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013).  In order for new evidence to be "material," there must be a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Glasco*, 645 F. App'x at 437 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).  A conclusory statement that the outcome would have been different is insufficient to establish

---

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

materiality. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 639 (6th Cir. 2016). "'Good cause' can be shown only by demonstrating a reasonable justification for failing to present the evidence at the administrative hearing." *Id.* (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)).

In her reply brief, the claimant posits that the treatment records before the ALJ were "innocuous" and that the letter "help[ed] define" and "explain[]" its contents. She further avers that it "provide[d] greater detail and insight into Dr. Guyton's assessed limitations[.]" (D.E. 11 at PageID 578, 581.) Thus, it does not appear the letter addressed anything that could be considered "new." Nor has the Plaintiff demonstrated satisfaction of the materiality element. As discussed in more detail in the next section of this opinion, the ALJ accorded little weight to Dr. Guyton's MSS because he determined it was inconsistent with his own clinical notes. It is equally likely the ALJ would have found the October 26, 2010, letter no less inconsistent with the treatment records than the MSS. Finally, and perhaps most importantly, Lee does not enlighten, or attempt to enlighten, the Court as to why she did not provide these helpful definitions, explanations, details, and insights to the ALJ prior to his decision. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 718 (6th Cir. 2013) (where claimant failed to show good cause for neglecting to obtain and submit to the ALJ a medical source statement from her physician who had begun treating her seven months prior to the ALJ's decision, sentence six remand was not warranted). Accordingly, the Court finds the claimant has failed to establish that the October 26, 2010, letter entitles her to a sentence six remand.

Returning to the merits of this appeal,[4] Plaintiff's assertion that the ALJ's failure to discuss treatment records from Pathways and Dr. Guyton's MSS in the step three analysis constituted error as a matter of law is unpersuasive. In support of her position, the claimant cites to *Miller v. Commissioner of Social Security*, 181 F. Supp. 2d 816 (S.D. Ohio 2001), in which the district court adopted a recommendation by the magistrate judge that the ALJ be reversed on the grounds she concluded the plaintiff's epilepsy and other impairments did not meet or equal any listing without discussing the elements of the relevant listings. *Miller*, 181 F. Supp. 2d at 819-20. The magistrate judge found that remand was appropriate as, absent such discussion, the court could not conduct a meaningful review of the record. *Id.* at 820.

In contrast, the ALJ in this case assessed the Pathways records and the MSS as part of his RFC analysis. Courts in this Circuit have found no basis for remand where the ALJ made sufficient factual findings elsewhere in his decision to support his determination at step three. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). He need not "spell[] out every consideration" that went into his ruling at this stage. *Bledsoe*, 165 F. App'x at 411; *see also Gill v. Colvin*, Case No. 1:15CV58, 2015 WL 8773885, at *6 (N.D. Ohio Dec. 15, 2015) ("To date, no published Sixth Circuit case requires an ALJ to articulate in any particular detail the manner in which a claimant failed to meet or equal a Listing. To the contrary, historically the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis," citing *Bledsoe*). Moreover, such error is harmless where the plaintiff has failed to make a showing that she meets the relevant listing's requirements. *See Forrest*, 591 F. App'x at 366. As noted above, the Commissioner's

---

[4]In light of its finding that the instant review falls under sentence four of § 405(g), the October 26, 2010, letter will not be considered in the Court's determination on the merits.

determination may not be overturned where substantial evidence supports the ALJ's conclusion. *Jones*, 336 F.3d at 477.

The ALJ's determination at the third step that Lee did not satisfy § 12.04 or § 12.06 of the listings is supported by substantial evidence. In the MSS, Dr. Guyton found moderate impairments in her ability to understand, remember, and carry out short, simple instructions. He noted marked difficulties in understanding, remembering, and carrying out detailed instructions; making judgments on simple work-related decisions; and interacting appropriately with the public, supervisors, and co-workers. Extreme impairments were documented in her abilities to respond appropriately to work pressures in a usual work setting and to changes in a work setting. In handwritten notations, Dr. Guyton related that the claimant's depression and anxiety levels caused "extreme problems with concentration on instructions given by others" and that her memory had "become a problem since depression started." (AR 466.) He further reported that Plaintiff did "not interact well with others in public," was "easily upset when rushed," and that "[i]ncreased physical problems cause[d] more symptoms of depression and anxiety." (*Id.* at 467.) Her difficulties, he opined, resulted in nervousness, panic attacks, crying spells, withdrawal, lack of motivation and energy, and tension headaches. He also found, however, that Lee could manage benefits in her own best interest.

According to the Pathways treatment notes, Plaintiff was treated first on April 13, 2009. The therapist documented major depression that had worsened over the preceding six months, nervousness, panic attacks associated with leaving the home, difficulties with being around others, and feelings of worthlessness, but no suicidal thoughts. Anxiety was not diagnosed at that time. A month later, Lee reported sleeping and feeling better with medication and attending a family cookout on Memorial Day. However, she suffered continued panic about being around

others and had to leave the cookout after a short time due to nervousness. The therapist noted her participation level in treatment as responsive, her behavior cooperative, and her appearance neat. Plaintiff's thought content was reflected as hopeless.

Notes from office visits with Lee's primary care physician, Dr. James Williams at the Primary Care Center in Trenton, Tennessee, from March 20 to July 28, 2009, documented anxiety and panic attacks with improved anxiety by the latter of these dates. In August 2009, Pathways therapy notes indicated depression due to family and financial stresses, including Lee's inability to see her granddaughter and her son's incarceration. Depression and withdrawal continued and worsened into October 2009, with Plaintiff reporting that she lacked motivation on some days to bathe or wash her hair. Panic attacks also remained an issue. In October 2009, her thought content was noted as appropriate. The following month, Lee reported doing "fairly well overall" and that, while her depression "comes and goes," it was better with medication. Panic attacks when in public had worsened, however, and Plaintiff indicated feelings of "losing her mind." A Pathways treatment plan form dated September 8, 2009, reflected an ability to express needs, amenability to treatment, good social and verbal skills, independence in activities of daily living, openness to learning new behaviors, and potential for insight.

By early 2010, therapy notes reflected panic attacks so severe that Lee could no longer shop alone unless she did so in the middle of the night when the store was virtually empty. The claimant also reported at this time that she had to depend heavily on family members for daily functioning, had poor concentration, and that she was under stress because of her husband's recent triple bypass and the birth of a grandchild. In April 2010, she was diagnosed with anxiety disorder.

In clinical notes dated May 22, 2009, Dr. Guyton indicated that Lee reported to him she was feeling better and that her daughter had noticed the change in her mood. She was, he related, "obviously less depressed and les[s] anxious." In notes from August 14, 2009, the physician reported she was "still feeling fairly well" but became anxious periodically. He added, "She is not particularly depressed, but more anxious. She eats all right and sleeps adequately." Dr. Guyton's notes from November 6, 2009, stated: "She still feels pretty good but has acute anxiety spells periodically. She is not very depressed. She eats and sleeps reasonably well." His final clinical notes contained in the record reflected that Lee was doing "fairly well" but that she was anxious about several pregnancies in the family. Plaintiff was "not particularly depressed," although she continued to suffer from panic attacks that required her to turn around and go home on occasion.

Also contained in the record were function reports completed by family members on December 14, 2008. Barbara Hensley, Lee's mother, related that Plaintiff prepared frozen dinners or sandwiches twice a week; went outside when she had to; did not drive because of an injury sustained during her employment; shopped for groceries once a week; could pay bills, count change, handle a savings account and use a checkbook; spent her days watching television; did not socialize; could not concentrate or get along with others because of her pain; could follow written and spoken instructions "well"; finished what she started; got along well with authority figures; and had difficulty handling stress or changes in routine. The form completed by Willie Mae Dick, the claimant's mother-in-law, contained nearly identical responses.

In a function report filled out by the claimant on December 17, 2008, she stated that she had poor concentration and attention due to pain; could follow spoken and written instructions; could finish what she started; avoided social activities because of pain; got along well with

authority figures; and did not handle stress or changes in routine well. The form included no mention of anxiety, depression, or panic attacks. Nor did she report problems with memory or understanding. Based on these function reports, as well as Plaintiff's hearing testimony, the ALJ, noting that her function report responses contradicted her testimony, concluded that she did not suffer marked difficulties required to meet or equal the listings.

In determining Plaintiff's RFC, the ALJ again referred to the function reports and Lee's hearing testimony. He also analyzed the evidence presented by Dr. Williams and Pathways. He gave little weight to the MSS of Dr. Guyton as it was inconsistent with the Pathways treatment notes, which the ALJ described as fairly routine. He also found the testimony and MSS with respect to social anxiety not credible in light of the claimant's ability to participate in treatment, her employment as a nurse's assistant, which required a high degree of social functioning, and the fact that she left that employment not because of psychological issues but as a result of a back injury.

The ALJ fully considered the Pathways records and the MSS of Dr. Guyton in his opinion and provided specific reasons, supported by the record as a whole, why this documentation did not provide a basis for a disability finding. This opinion was supported by substantial evidence and, therefore, will not be disturbed.[5]

---

[5]In making his determination with respect to Plaintiff's mental impairments, the ALJ gave considerable weight to the May 18, 2009, mental RFC assessment of state agency psychologist C. Warren Thompson, Ph.D., on the grounds it was consistent with the weight of the medical evidence. The assessment noted moderate limitations in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He concluded that claimant could remember and understand simple and detailed instructions, interact with others, and adapt to change. Finally, Dr. Thompson opined that Lee had some but not substantial difficulty maintaining concentration, persistence, or pace.

<u>Weight Accorded to the Opinions of Treating Physicians.</u>

*Treating Physician Rule*

This assertion challenges the ALJ's RFC finding and invokes the treating physician rule. The RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 396 n.3 (6th Cir. 2016). Social Security Ruling ("SSR") 96-8p defines RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184; at *1 (July 2, 1996); *Miller*, 811 F.3d at 838. "The ALJ determines a claimant's RFC based on evidence such as medical records, doctor's opinions, and the claimant's descriptions of her symptoms." *Stephenson v. Comm'r of Soc. Sec.,* 635 F. App'x 258, 263 (6th Cir. 2015) (citing 20 C.F.R. § 404.1529(a)). The ALJ is also to consider "any description [the claimant's] . . . nonmedical sources may provide about how the symptoms affect [her] activities of daily living and [her] ability to work." 20 C.F.R. § 404.1529(a).

The treating physician rule is a standard imposed by the Commissioner relative to consideration of medical source evidence. *Staymate*, 2017 WL 902136, at *3. It "requires the ALJ to give a treating source opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)) (internal quotation marks omitted). If the ALJ does not accord the opinion of a treating physician controlling weight, he is to "consider the following factors to determine what weight to give it: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion,

16

consistency of the opinion with the record as a whole, and the specialization of the treating source." *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 456 (6th Cir. 2016) (per curiam) (citing *Wilson*, 378 F.3d at 544). An ALJ who declines to give controlling weight to a treating source's opinion must give "good reasons" for doing so. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016). "This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th Cir. 2015) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)) (internal quotation marks omitted). "An ALJ's failure to comply with this requirement denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (citing *Rogers*, 486 F.3d at 243) (internal quotation marks omitted). There is no requirement, however, that the ALJ expressly address each of the factors set out above. *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010); *Dunkle v. Comm'r of Soc. Sec.*, Civil Action 2:16-cv-240, 2017 WL 815103, at *7 (S.D. Ohio Mar. 2, 2017). The Plaintiff contends the ALJ failed to give adequate weight to the opinions of Drs. Guyton and Williams in determining her RFC.

*Dr. Guyton*

As referenced in a previous section, the ALJ afforded Dr. Guyton's opinion little weight because it was inconsistent with Pathways treatment notes, her activities of daily living, and her previous employment. The opinion of a treating physician that is at odds with his own treatment notes provides a "good reason" for giving his opinion little weight. *See Dunkle*, 2017 WL 815103, at *8; *Foight v. Comm'r of Soc. Sec.*, Case No. 1:15-CV-0566, 2016 WL 4136522, at *4 (W.D. Mich. Aug. 4, 2016); *Loveday v. Comm'r of Soc. Sec.*, No. 1:15-cv-196-CLC-SKL, 2016 WL 4921544, at *11 (E.D. Tenn. July 26, 2016), *report & recommendation adopted* 2016 WL

4943811 (E.D. Tenn. Sept. 15, 2016). An opinion inconsistent with a claimant's activities of daily living also constitutes "good reason" for declining to give controlling weight. *See Dunkle*, 2017 WL 815103, at *8; *James v. Berryhill*, Case No. 5:16CV63, 2017 WL 553309, at *9 (N.D. Ohio Feb. 10, 2017); *Miller v. Comm'r of Soc. Sec.*, Case No. 1:15-CV-0638, 2016 WL 3411663, at *4 (W.D. Mich. June 22, 2016). As previously noted, Dr. Guyton's assessment of marked and extreme limitations were inconsistent with his own treatment records and were not reflected in Lee's activities of daily living. The ALJ's explanation for giving Dr. Guyton's MSS little weight constitutes good reasons for doing so and is supported by substantial evidence.

*Dr. Williams*

Medical records of Dr. Williams from December 2007 to February 2010 documented pain management for the treatment of chronic lower back pain. On December 21, 2007, Lee advised the physician that she could not work, walk, or hold her grandchild. Two weeks later, it was indicated that she came to the office, walking without a limp and bearing a child carrier. Over the course of his treatment, he frequently noted no distress, clubbing, cyanosis, edema, or sensory deficit.

In an MSS dated May 25, 2010, the physician reported that the claimant complained of recurrent lower back and bilateral hip pain with radiation down the leg and into the foot. He opined that she could sit for two hours and fifteen minutes at a time, and stand or walk for three hours and thirty minutes. It was also his opinion that she could lift and/or carry five pounds and use her hands for gross manipulation frequently, and lift and/or carry ten pounds, bend, stoop, push/pull, and use her hands for fine manipulation occasionally. Further, he advised that Plaintiff's fatigue and/or pain, which he characterized as moderately severe, affected her abilities to concentrate and focus and required that she rest for fifteen minutes every fifteen or twenty

minutes during a workday. Dr. Williams based his conclusions on magnetic resonance imaging ("MRI") of the cervical and lumbar spine. The MRI of the lumbar spine revealed spondylosis at L4-L5 and foraminal stenosis at L5-S1 and imaging of the thoracic spine indicated bulging discs at T8-9 and T11-12.

The ALJ gave great weight to his opinion to the extent it reflected a capacity for sedentary work as it was consistent with the medical evidence in the record. Plaintiff argues that the weight given the opinion of Dr. Williams, a treating physician, was misplaced because it did not in fact support a finding that she could perform a full range of sedentary work.

Dr. Williams opined that the claimant could lift no more than ten pounds occasionally, which fits the Commissioner's definition of sedentary work. His opinion that she could sit for two hours and fifteen minutes in an eight-hour workday does not. As the claimant points out, at the sedentary level of exertion, "sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, *5 (Jan. 1, 1983). However, Dr. Williams's opinion as to Lee's ability to sit is inconsistent with the other substantial evidence in the case record.

The claimant presented to the emergency department of Gibson General Hospital in Trenton, Tennessee, following her back injury in November 2007. It was recorded that she was in pain, but was ambulatory, had normal gait, and was in only mild to moderate distress. The records noted negative straight leg raising and normal deep tendon reflexes. Claimant continued to visit the emergency room throughout 2008 with similar findings. She received physical therapy and, after appearing for four of six scheduled appointments, reported reduced pain.

In December 2007, Plaintiff was examined by workers' compensation physician Joseph P. Rowland, M.D., a neurosurgeon, who noted negative straight leg raise, no tenderness to palpation of the back, no limitation of back motion, and adequate pulses in the upper and lower

extremities. Cranial nerves were intact and there was no motor loss, reflex, or sensory loss. Dr. Rowland determined she had "a little foraminal stenosis" but was uncertain whether she had "anything of a surgical nature." (AR 276.) An electromyography/nerve study performed in early January 2008 was unremarkable as to the right lower extremity. A thoracic x-ray/MRI showed bulging of the T8-9 and T11-12 "felt not to be significant" and "small thoracic syrinx." (*Id.* at 278.) Notes dated January 21, 2008, reflected complaints of "back pain and right intercostal pain of a mild nature and right leg pain," as well as "a little occasional pain in the lower thoracic area and a little aching in the right intercostal area on the right-hand side." (*Id.*) Dr. Rowland concluded that her thoracic and syrinx issues were not related to her November 2007 fall.

In February 2008, the claimant reported to Dr. Rowland that she could "hardly walk." (*Id.* at 280.) He noted "some pain in her back in the costal area and some right leg pain." (*Id.*) He further documented negative straight leg raise and no motor loss, reflex, or sensory loss except for decreased pinprick in the right leg in a nonspecific dermatome pattern. He could find no impairment of a neurological nature and again described the bulging disc at T8-9 as "not significant," noting "a little tenderness" in the lumbar area. (*Id.*) Dr. Rowland determined that she was not a candidate for surgery and recommended physical therapy and light duty with no lifting or bending and a limit of lifting ten pounds. He remarked in his notes that Lee told him "emphatically she could not go back nor should go back to work." (*Id.*) The neurosurgeon indicated in notes from April 14, 2008, that Lee should be able to "do light duty, no extreme heavy lifting or bending over ten pounds and no repetitive bending" until a report from a capacity test performed in March 2008 was completed. (*Id.* at 281.) The physician added that, "If that shows she can go back to normal activities then that is their decision to make." (*Id.*)

The claimant apparently sought a second opinion from neurosurgeon John D. Brophy, M.D., of Semmes-Murphey Clinic, who "found nothing" and also opined that she was not a surgical candidate. He suggested limiting her to lifting ten pounds and physical therapy. (*Id.* at 280.)

The March 2008 Capabilities and Physical Job Requirements Overview report, performed at the Occupational Rehabilitation Center in Jackson, Tennessee, reflected that Plaintiff could sit for eight hours in an eight-hour workday without limitation, stand for eight hours for durations of sixty minutes, and walk for four to five hours for frequent moderate distances. The therapist terminated the standing tolerance testing after forty-nine minutes because no pain behaviors were observed, although the claimant stated that she was "sort of uncomfortable" and "didn't much care for standing in one spot." (*Id.* at 388.) The assessment also showed Lee could lift up to 19.2 pounds above the shoulder, seventeen pounds at desk/chair level, and 14.8 pounds at chair/floor level, and could push/pull in a standing position up to 17.7 pounds and carry up to twenty-two pounds. Cervical mobility was reported as full range on extension, forward flexion, right lateral flexion, left lateral flexion, right rotation, and left rotation, without pain. Gait was normal.

Another of Plaintiff's workers' compensation physicians, Samuel J. Chung, D.O., a doctor of osteopathic medicine at the Center for Spine Care in Jackson, Tennessee, conducted an independent medical examination on August 14, 2008, and concluded that Plaintiff had eight percent impairment to the whole person. He added as follows:

> It appears that the patient has specific injury that caused her lower back and sacrum to functionally mal-rotate [and] cauding [sic] significant lower back discomfort with some degree of radicular symptoms. With time, she had improved with some treatment; however, complete resolve [sic] of her symptoms did not occur. She was not a very good candidate for surgery. Therefore, the patient was treated conservatively. However, she continues to have [a] significant

level of discomfort.  She also has loss of range of motion and has also decrease in activities of daily living. . . .  In the future, the patient should avoid prolonged walking, standing, stooping, squatting, bending, and excessive flexion and extension rotation of her back.

(*Id.* at 285.)

In a physical RFC assessment dated December 30, 2008, medical consultant Carol A. Lemeh, M.D., opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, could stand and/or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  Her ability to push and/or pull was unlimited.  Dr. Lemeh also indicated that Lee could climb, balance, stoop, kneel, crouch, and crawl frequently.  No manipulative, visual, communicative, or environmental limitations were noted.  The consulting physician stated a primary diagnosis of paracentral disc protrusion of the thoracic spine and a secondary diagnosis of syrinx at T11-L1.

The ALJ determined that Plaintiff's statements to Dr. Williams in December 2007 that she could not work, walk, or hold her grandchild lacked credibility in light of her appearance at his office two weeks later, walking without a limp and carrying an infant carrier.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, so long as there is substantial evidence to support them."  *Bowman*, 2017 WL 1065553, at *7 (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)) (internal quotation marks omitted).  Indeed, the fact that Dr. Williams made note of the incident suggests that he too considered the possibility she was exaggerating her symptoms of back pain.  Further, while the record shows that Plaintiff suffered from bulging discs and foraminal stenosis, these impairments do not militate a finding of disability.  *See Dejaegher v. Comm'r of Soc. Sec.*, Case No. 1:15-CV-1093, 2017 WL 1017818, at *5 (W.D. Mich. Mar. 16, 2017) (even though claimant had bulging disc causing lower back pain that resulted in a certain amount of limitation, substantial evidence

supported ALJ's determination that her impairment did not meet the listings); *Johnson v. Comm'r of Soc. Sec.*, Case No. 14-11375, 2015 WL 5093321, at *10 (E.D. Mich. Aug. 28, 2015) (despite the fact claimant suffered from foraminal stenosis, ALJ's determination that his impairment did not meet or equal the listings was supported by substantial evidence). Rather, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).

The ALJ reviewed and discussed the totality of the foregoing medical evidence and his conclusion that Dr. Williams's limitations with respect to sitting, standing, and/or walking were not consistent with the whole record. He also explained that the treating physician's assessment of disabling pain was unsupported by his own treatment notes, which indicated a general lack of distress, gait disturbance, edema, cyanosis, or neurological deficits. Thus, while the evidence reflects that Plaintiff suffered from degenerative disc disease, the ALJ provided good reasons, supported by substantial evidence, for declining to give controlling weight to Dr. Williams's opinion of disabling pain.

The Plaintiff also asserts that Dr. Williams's conclusion that she could not perform the fine manipulation necessary for sedentary work was wrongly rejected by the ALJ. This contention is without merit, as she has pointed to no evidence in the record, or in Dr. Williams's treatment notes, to support a functional deficit in fine hand manipulation.

Use of the Grids at Step Five.

In the five-step sequential evaluation process, "[t]he claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Staymate*, 2017 WL 902136, at *5 (quoting *Wilson*, 378 F.3d at 548). At that point, [the Commissioner] must "identify a significant number of jobs in the economy that accommodate the claimant's

[RFC] and vocational profile." *Id.* (quoting *Wilson*, 378 F.3d at 548). "An ALJ can use Medical-Vocational guidelines or 'grids' at the fifth step of the disability determination after the claimant has been found not to meet the requirements of a listed impairment, but found nevertheless incapable of performing past relevant work." *Lee*, 529 F. App'x at 714 (quoting *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010)) (internal alterations omitted). "The grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level, and a specific rule . . . for the heavy and very heavy levels." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 679 (6th Cir. 2013) (internal citations & footnote omitted). Based on the claimant's RFC, the ALJ must first decide which table to apply. *Id.* Second, "based on the plaintiff's age, education, and previous work experience, the rule directs a finding of 'disabled' or 'not disabled.'" *Id.* The ALJ may use the grids "*only* where the grids accurately and completely describe the plaintiff's abilities and limitations." *Id.* That is, "the Commissioner may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level." *Lee*, 529 F. App'x at 714 (quoting *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008)).

Here, the claimant maintains the ALJ erred in relying on the grids to determine that she was not disabled in light of her nonexertional mental and physical limitations. However, for reasons set forth herein, the ALJ's determination that she could perform a full range of sedentary work is supported by substantial evidence.

Lee further seeks a sentence six remand for consideration of the opinion of Vocational Expert ("VE") Nancy Hughes, which was submitted only to the Appeals Council. In preparing

her report, dated November 15, 2010, Hughes reviewed three documents: the MSS of Dr. Williams, the MSS of Dr. Guyton, and the October 26, 2010, letter. Based on this review, the VE concluded these materials "would preclude Ms. Lee from returning to her past occupations or to any other occupations found in the national economy." (AR 479.)

As noted above, in order to obtain a sentence six remand, a claimant must establish that the evidence to be considered on remand is new and material, and that there was good cause for not submitting the evidence to the ALJ. The VE's report fails at the second element -- materiality. The Court has determined herein that the ALJ's failure to accord weight to the Medical Source Statements reviewed by Hughes was supported by substantial evidence. The Court has further found that the October 26, 2010, was not material. Thus, there is no indication that the VE's report, based exclusively on these documents, would have changed the outcome of the ALJ's decision.

## CONCLUSION

For the reasons articulated herein, the Commissioner's determination will be AFFIRMED. A separate judgment shall issue.

IT IS SO ORDERED this 23rd day of May 2017.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE